

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| KBC ASSET MANAGEMENT NV, Individually and on Behalf of All Others Similarly Situated,<br>　　　　　　　Plaintiff,<br><br>vs.<br><br>3D SYSTEMS CORPORATION, ABRAHAM N. REICHENTAL, DAMON J. GREGOIRE, and TED HULL,<br>　　　　　　　Defendants. | § § § § § § § § § § § § | CIVIL ACTION NO. 0:15-2393-MGL |

**MEMORANDUM OPINION AND ORDER
GRANTING KBC'S MOTION FOR CLASS CERTIFICATION,
TO CERTIFY KBC AS THE CLASS REPRESENTATIVE,
AND TO APPOINT MOTLEY RICE AND ROBBINS GELLAR AS CLASS COUNSEL**

**I.    INTRODUCTION**

This is a federal securities action. Plaintiff KBC Asset Management NV (KBC), individually and on behalf of all others similarly situated, brought this lawsuit against Defendants 3D Systems Corporation (3D Systems), Abraham N. Reichental, Damon J. Gregoire, and Ted Hull under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Security Exchange Commission Rule 10b-5, promulgated thereunder. *See* 17 C.F.R. § 240.10b-5. The Court has jurisdiction over the matter in accordance with 28 U.S.C. § 1331 and Section 26 of the Exchange Act, 15 U.S.C. § 78aa.

Pending before the Court is KBC's motion as per Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure asking the Court to certify this lawsuit as a class action on behalf of a class comprised of all persons or entities who, between October 29, 2013, and May 5, 2015 (the Class Period), purchased or otherwise acquired common stock of 3D Systems and were damaged as a result (the Class). Excluded from the Class are: Defendants, the officers and directors of 3D Systems, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which the defendants have or had a controlling interest. KBC also moves the Court to certify it as the Class Representative and appoint Motley Rice and Robbins Gellar as Class Counsel for this litigation.

Having considered the motion, Defendants' response, KBC's reply, the record, and the applicable law, the Court will grant the motion (1) for class certification, (2) to certify KBC as the class representative, and (3) to appoint Motley Rice and Robbins Gellar as class counsel.

## II. PROCEDURAL HISTORY

The factual and procedural history of this action is well known to the parties. For the one who is unfamiliar, the information is available in the Court's order denying Defendants' motion to dismiss: *KBC Asset Mgmt. NV v. 3D Sys. Corp.*, No. 0:15-CV-02393-MGL, 2016 WL 3981236, at *1-2 (D.S.C. July 25, 2016). After the Court denied that motion, KBC filed this one.

The Court, having been fully briefed on the pertinent issues, will now explain why it concludes KBC's motion should be granted.

**III.    STANDARD OF REVIEW**

The Fourth Circuit has long "stressed . . . it is not the defendant who bears the burden of showing that the proposed class does not comply with Rule 23, but that it is the plaintiff who bears the burden of showing that the class does comply with Rule 23." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006). Coupled with "the plaintiffs' burden to demonstrate compliance with Rule 23 [is] the district court['s] independent obligation to perform a rigorous analysis to ensure that all of the prerequisites have been satisfied." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

"The class-action device, which allows a representative party to prosecute his own claims and the claims of those who present similar issues, is an exception to the general rule that a party in federal court may vindicate only his own interests." *Thorn*, 445 F.3d at 318. The "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citation omitted) (internal quotation marks omitted) (alteration omitted).

"To be certified, a proposed class must satisfy Rule 23(a)." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). "The requirements of Rule 23(a) are familiar: numerosity of parties, commonality of factual or legal issues, typicality of claims and defenses of class representatives, and adequacy of representation." *Thorn*, 445 F.3d at 318.

In addition to meeting the requisites of Rule 23(a), the movant "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* Here, KBC seeks to fulfill the mandate of Rule 23(b)(3), "which requires a court to find that the questions of law or fact common

to class members predominate over any questions affecting only individual members." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotation marks omitted).

The predominance criterion in Rule 23(b)(3) "is even more demanding than Rule 23(a). Rule 23(b)(3), as an adventuresome innovation, is designed for situations in which class-action treatment is not as clearly called for." *Id*. That may account for "Congress's addition of procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out), and the court's duty to take a close look at whether common questions predominate over individual ones." *Id*.

The Court will "take a close look at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." *Thorn*, 445 F.3d at 319 (internal quotation marks omitted). "Such findings can be necessary even if the issues tend to overlap into the merits of the underlying case." *Id*. "The likelihood of the plaintiffs' success on the merits, however, is [ir]relevant to the issue of whether certification is proper." *Id*.

The Fourth Circuit has counseled the district courts to construe Rule 23 liberally. *Gunnells*, 348 F.3d at 424. Nevertheless, it remains true the appellate court accords this Court "broad discretion in deciding whether to allow the maintenance of a class action." *Brown v. Nucor Corp.*, 576 F.3d 149, 161 (4th Cir. 2009) (quoting *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976) (internal quotation marks omitted); *Gunnells*, 348 F.3d at 434 (The Fourth Circuit "accord[s] the district court's class certification decision substantial deference.").

"As with any other decision that appellate courts review for abuse of discretion, [the Fourth Circuit will] affirm a certification decision even if it is convinced that 'reasons clearly existed for

4

taking the other course.'" *Brown*, 785 F.3d at 929 (quoting *Lewis v. Bloomsburg Mills, Inc.*, 773 F.2d 561, 564 (4th Cir.1985)).

The abuse-of-discretion standard represents "one of the most deferential standards of review." *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 121 (2d Cir. 2001). "Under it, the appellate court may reverse only when 'the [trial] court's exercise of discretion, considering the law and the facts, was arbitrary and capricious.'" *Brown*, 785 F.3d at 928 (quoting *United States v. Mason*, 52 F.3d 1286, 1289 (4th Cir. 1995)). The Fourth Circuit will "act only when the decision could not 'have been reached by a reasonable jurist,' or when [it] may call it "fundamentally wrong," "clearly unreasonable, arbitrary, or fanciful." *Id*. (quoting *Bluestein v. Cent. Wis. Anesthesiology, S.C.*, 769 F.3d 944, 957 (7th Cir. 2014)).

"Issues of class action manageability are properly committed to the district court's discretion, because that court 'generally has a greater familiarity and expertise' with the 'practical . . . and primarily . . . factual' problems of administering a lawsuit 'than does a court of appeals.'" *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993) (quoting *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 65 (4th Cir. 1977) (en banc)).

**IV.    CONTENTIONS OF THE PARTIES**

According to KBC, it satisfies the requirements of numerosity, commonality, typicality, and adequacy as set forth in Rule 23(a), as well as those set forth in Rule 23(b)(3): "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

Defendants, however, maintain: (1) KBC is subject to a unique defense, which makes its claims atypical such that the typicality requirement set forth in Rule 23(a)(3) is unfulfilled; (2) KBC lacks control over the litigation and failed to respond timely to discovery requests, thus rendering it to be an inadequate Class Representative under Rule 23(a)(4); (3) KBC's unique defense also assigns it inadequate to represent the putative class in accordance with Rule 23(a)(4); and (4) KBC is unable to establish the Rule 23(b)(3) predominance requirement because KBC has neglected to prove damages can be calculated on a class-wide basis. In the alternative, Defendants assert the Class Period should end on April 24, 2015 because: (1) no curative information was disclosed after April 24, 2015, and (2) there was no price impact resulting from the May 6, 2015, disclosure.

## V. DISCUSSION AND ANALYSIS

### A. *KBC satisfies all of the mandates of Rule 23(a).*

#### 1. *KBC fulfills the Rule 23(a)(1) numerosity requirement and the Rule 23(a)(2) commonality requirement.*

To prevail on its motion to certify, KBC must, among other things, establish "(1) the class is so numerous that joinder of all members is impracticable [and] (2) there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a).

Defendants neglect to dispute KBC meets these two obligations of Rule 23(a). And the Court agrees with KBC it satisfies those requisites. Because any argument Defendants could have made to the contrary is now waived, the Court need not spend time discussing those two factors here. *See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) ("A party's failure to discuss an issue in his brief is to be deemed an abandonment of that issue." (citations omitted)).

6

## 2. *KBC fulfills the typicality requirement of Rule 23(a)(3).*

Rule 23(a)(3) requires KBC to demonstrate "the claims or defenses of the representative parties are typical of the claims or defenses of the class."

KBC asserts its claims are typical of those of the Class because they arise out of the same course of conduct and are based on the same legal theory as the claims of the Class. Defendants counter KBC's claims are atypical because KBC is subject to a unique defense. Specifically, Defendants argue KBC purchased a large portion of its holdings in 3D Systems common stock after Defendants' July 31, 2014, disclosure, which Defendants point out is the date KBC's complaint alleges the "truth began to emerge." Defs.'s Opp. 10. Defendants proffer KBC's post-disclosure purchases "tend to show a jury that the alleged misrepresentations and omissions did not affect KBC's purchasing decision." *Id.* at 11.

"[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), *abrogated by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017). KBC agrees a "unique defense[ ] . . . threaten[s] typicality if [it] is likely to be central to the litigation." KBC's Reply 7 n.6.

"[T]he presence of even an arguable defense peculiar to the named plaintiff . . . may destroy the required typicality of the class . . . . The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer." *J.H. Cohn & Co. v. Am. Appraisal Assocs.*, 628 F.2d 994, 999 (7th Cir. 1980) (internal citations omitted).

7

The Court notes Defendants have failed to dispute the claims of KBC and the Class arise out of the same course of conduct and are based upon the same legal theory. Rather, Defendants' argument KBC is unable to satisfy the typicality requirement of Rule 23(a)(3) is based solely upon Defendants' contention KBC is subject to a unique defense as to its claims against Defendants.

The Court is unpersuaded by Defendants' argument KBC is subject to a unique defense based on its purchases made after Defendants' July 31, 2014, disclosure. As set forth above, the Class Period is October 29, 2013, to May 5, 2015. According to the Amended Complaint, Defendants' disclosure on July 31, 2014, was the first of several partial disclosures occurring during the Class Period. Am. Compl. ¶¶ 176-238. KBC alleges Defendants' partial disclosures made during the Class Period were coupled with misrepresentations and omissions that continued to mislead investors. *See id.* Thus, KBC's theory of liability includes damages resulting from alleged partial disclosures during the Class Period, starting with the partial disclosure on July 31, 2014.

The Court holds KBC's purchasing of holdings after Defendants' partial disclosure on July 31, 2014, but within the Class Period fails to result in a defense unique to KBC. Because such purchases were made during the Class Period, they do not subject KBC to a unique defense.

There is no suggestion KBC is the only class member who bought Defendants' stock after July 31, 2014. In fact, nearly half of the Class Period occurs after the July 31, 2014, disclosure, and, absent evidence to the contrary, the Court is unable to believe KBC was the only entity to purchase Defendants' stock between July 31, 2014, and the end of the Class Period given the stock was publicly traded. To the extent Defendants have a unique defense as to KBC based on KBC's Class Period purchases made after July 31, 2014, such defense is not unique to KBC but will instead be applicable to many Class members.

The Court observes KBC assertion it acquired a small percentage of 3D System stock after the Class Period. KBC's Reply at 9. Defendants rely on the fact KBC purchased a large portion of its holdings after July 31, 2014, in support of their argument KBC is subject to a unique defense

8

destroying typicality. Thus, Defendants' position is based upon KBC's purchases made after July 31, 2014, and within the Class Period. To the extent Defendants intend to argue KBC's purchases made after the Class Period defeat typicality, the Court holds the minimal portion of its holdings KBC bought after the Class Period is insufficient to destroy typicality.

Even if the Court agreed with Defendants KBC is subject to a unique defense, however, the Court is unprepared to say KBC is likely to "become distracted by the presence of a possible defense applicable only to [it] so that the representation of the rest of the class will suffer." *J.H. Cohn & Co.*, 628 F.2d. at 999.

In the present case, Defendants have stated they "will aggressively pursue the line of inquiry regarding KBC's post-disclosure purchases because it does tend to show a jury that the alleged misrepresentations and omissions did not affect KBC's purchasing decision." Defs.' Opp. 11. The Court is unaware of any reason why Defendants should be disallowed from making such an argument. But Defendants' statement they "will aggressively pursue the line of inquiry," *id*., is not the same as to say the issue will become the focus of the litigation. And, even if they did say so, such a statement, standing alone, would fail to convince the Court the post-disclosure purchases will become the central point of the litigation.

The Court, not the parties, will manage this class action litigation; and Defendants have presented nothing to the Court to convince the Court it will be unable to do so such that the focus remains on the class's claims and not KBC's purchases of 3D Systems stock after the disclosures. In the unlikely event something changes the Court's opinion on this matter, however, the Court has the option of decertifying the class. *See General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *In re School Asbestos Litig*., 789 F.2d 996, 1011 (3d Cir.1986) ("When, and if, the district court is convinced that the litigation cannot be managed, decertification is proper.").

Consequently, because it is undisputed KBC's claims and those of the Class arise out of the same course of conduct and are premised upon the same legal theory, because any defense Defendants might have resulting from KBC's stock purchases occurring after July 31, 2014, is not unique to KBC, and because, even if the Court were to agree KBC is subject to a unique defense, it concludes the issue will not become the focus of the litigation, the Court holds KBC satisfies the typicality requirement of Rule 23(a)(3).

### 3. *KBC fulfills the adequacy requirement of Rule 23(a)(4).*

Rule 23(a)(4) mandates "the representative parties . . . fairly and adequately protect the interests of the class." *Id*. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625.

Defendants state KBC's motion should be denied because its lack of control over the litigation makes it an inadequate Class Representative. According to Defendants, it is counsel for KBC, in lieu of KBC itself, who is monitoring and managing this action. Further, in a footnote, Defendants halfheartedly argue KBC's alleged failure to comply timely with some of their discovery requests points to KBC's inadequacy to serve as the Class Representative. Defendants also contest the adequacy of KBC serving as a Class Representative because, as discussed above, they maintain KBC is subject to a unique defense.

"Congress' clear intent in enacting the [Private Securities Litigation Reform Act] was to transfer control of securities class actions from the attorneys to the class members (through a properly selected lead plaintiff)." *In re Cendant Corp*., 260 F.3d 183, 197 (3d Cir. 2001). Nevertheless, "[i]t is hornbook law . . . in a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case . . . to be an adequate representative." *Gunnells*, 348 F.3d at 430 (citation omitted) (internal quotation marks omitted) (alteration omitted).

The Court, having carefully considered the record, is left with the firm conviction KBC has shown substantial commitment and involvement in this litigation and has demonstrated it is adequate in this regard. For instance, as noted by KBC, the deposition testimony of Bart Elst, a Senior Company Lawyer for KBC, establishes, among other things, KBC's knowledge of: the names and positions of each of the defendants, Elst Depo. 72:11-20; the claims in the lawsuit, *id.* at 72:21-74:18; the four partial disclosures, *id.* at 74:4–8; the dates of the Class Period, *id.* at 74:24-75:2; the status of the case, *id.* at 140:14-17; and the name of KBC's expert, Chad Coffman, *id.* at 114:18-20. Further, Elst attested "the interests of KBC and the interests of the other class members [are] the same–[are] equal" and KBC was "prepared to assume an active role in this case." *Id.* at 70:25-71:5.

Concerning Defendants' discovery argument, the purported failure by KBC to abide by Defendants' discovery request was evidently not so lacking as to require the Court's formal intervention. The alleged discovery abuse is thus an insufficient basis on which the Court can properly hold KBC to be an inadequate Class Representative.

As to the unique defense argument, as discussed above, the Court rejected that claim. Thus, the Court concludes KBC meets the Rule 23(a)(4) adequacy requirement.

> **B.** *KBC satisfies the Rule 23(b)(3) requirement to show common questions of law and fact predominate over any individual issues and class action is superior to other available methods of fairly and efficiently adjudicating the controversy.*

There is no dispute as to the superiority portion of Rule 23(b)(3); and the Court agrees class action is superior to other available methods of fairly and efficiently adjudicating the controversy. Thus, the Court will discuss only whether KBC satisfies the Rule 23(b)(3) predominance requirement.

Defendants contest KBC's ability to satisfy Rule 23(b)(3)'s predominance requirement because, according to Defendants, KBC has failed to demonstrate damages can be calculated on a class-wide basis. Defendants contend the report by Coffman, KBC's expert, on the damages model is "woefully inadequate[,]" Defs.' Opp. 2, because Coffman "fails to explain how he would

11

calculate damages that result from the alleged misrepresentation or omissions and only the alleged misrepresentations. [KBC's] failure to meet its burden under *Comcast* requires that class certification be denied." Defs.' Opp. 3 (citations omitted) (emphasis omitted).

"In the mine run of cases, it remains 'black letter rule . . . a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." *Comcast*, 133 S. Ct. at 1437 (citation omitted). "Rule 23(b)(3) actions are framed for situations in which class-action treatment is not clearly called for but may nevertheless be convenient and desirable." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001) (citation omitted) (internal quotation marks omitted) (alteration omitted). The predominance inquiry asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

"In actions for money damages under Rule 23(b)(3), courts usually require individual proof of the amount of damages each member incurred. When such individualized inquiries are necessary, if common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003) (citations omitted) (internal quotation marks omitted) (alterations omitted).

"[A] model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast*, 569 U.S. at 35. "Calculations need not be exact, but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case. *Id*. (citations omitted) (internal quotation marks omitted).

Coffman employed the out-of-pocket method for accessing alleged per share damages in this action, which, he states,

> measures damages as the artificial inflation per share at the time of
> purchase less the artificial inflation at the time of sale (or, if the share
> is not sold before full revelation of the fraud, the artificial inflation
> at the time of purchase, subject to the PSLRA's "90-day lookback"
> provision, a formulaic limit on damages that can also be applied on
> a class-wide basis).

Coffman's Report ¶ 76. In other words, the out-of-pocket method calculates the difference between the price at which the stock sold and the price at which the stock would have sold absent any artificial inflation caused by a defendant's alleged misrepresentations or omissions. The Supreme Court long ago agreed with this approach when it held "the correct measure of damages . . . is the difference between the fair value of all [the plaintiff] received and the fair value of what he would have received had there been no fraudulent conduct." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 155 (1972). Thus, the Court holds KBC's method of calculating damages is appropriate for purposes of this class action.

As to Defendants' contentions Coffman's methodology fails to make an allowance for any damages caused by things other than Defendants' alleged fraud, such is not required at the class certification stage of the proceedings. Here, to fulfill the mandates of *Comcast*, Plaintiff must satisfy the Court its damages model will measure only the damages matching its theory for liability. It has done so. During discovery, the parties will no doubt attempt to ferret out all possible factors, other than the alleged misrepresentations, that might have effected 3D System's stock price during the relevant period. Any such data can then be included in any damage calculation.

### C. *Plaintiff's request to appoint Appoint Motley Rice and Robbins Gellar as Class Counsel will be granted.*

Plaintiff has asked the Court to appoint Motley Rice and Robbins Gellar as Class Counsel. Defendants have failed to object. Inasmuch as the Court is of the firm belief Motley Rice and Robbins Gellar are well suited to serve in this capacity, the Court will grant Plaintiff's request.

### D. The Class Period will not be shortened.

The Court noted above Defendants' two bases for suggesting the Class Period should end on April 24, 2015, as opposed to May 5, 2015: (1) no curative information was disclosed after April 24, 2015, and (2) there was no price impact resulting from the May 6, 2015, disclosure. "'Price impact' simply refers to the effect of a misrepresentation on a stock price." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 814 (2011).

From the Court's review of the record, it appears there is a substantial issue of material fact as to whether Defendants' April 24, 2015, disclosure revealed material information that was fully or partially curative. For instance, the April 24, 2015, disclosure stated 3D Systems did not "expect to report organic growth for the quarter" but Defendants had not "given up" on reporting organic growth for the year, Amended Complaint ¶ 230. The May 6, 2015, disclosure, however, set forth organic revenue growth had declined by seven percent, *id.* ¶ 18. Further, although Defendants said in the April 24, 2015, disclosure it would likely update 3D Systems' annual guidance of revenue and earnings per share for 2015, *id.* ¶ 230, Defendants withdrew the previously issued annual guidance for 2015 in the May 6, 2015, disclosure, *id.* ¶ 239. Consequently, the Court is unable to say there was no curative information disclosed after April 24, 2015. Defendants' contention there was no price impact resulting from the May 6, 2015, disclosure fares no better.

There appears no dispute Plaintiffs are entitled to what courts refer to as the *Basic* presumption:

> *Basic* held that securities fraud plaintiffs can in certain circumstances satisfy the reliance element of a Rule 10b–5 action by invoking a rebuttable presumption of reliance, rather than proving direct reliance on a misrepresentation. The Court based that presumption on what is known as the "fraud-on-the-market" theory, which holds that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988). The Court also noted that, rather than scrutinize every piece of public information about a company for himself, the typical "investor who buys or sells stock at the price set by the market does

> so in reliance on the integrity of that price"—the belief that it reflects all public, material information. *Id*. at 247. As a result, whenever the investor buys or sells stock at the market price, his "reliance on any public material misrepresentations ... may be presumed for purposes of a Rule 10b–5 action." *Id*.

*Halliburton Co. v. Erica P. John Fund, Inc*., 134 S. Ct. 2398, 2408 (2014) (*Halliburton II*). Nevertheless, "defendants must be afforded an opportunity before class certification to defeat the presumption through evidence that an alleged misrepresentation did not actually affect the market price of the stock." *Id*. at 2417. Thus, "defendants ha[ve] the burden to come forward with evidence showing a lack of price impact. *See* Fed. R. Evid. 301 ('the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption')." *IBEW Local 98 Pension Fund v. Best Buy Co*., 818 F.3d 775, 782 (8th Cir. 2016).

On the record before it, the Court is unable to say Defendants have presented evidence sufficient to convince it there was no price impact associated with the May 6, 2015 disclosure. In fact, 3D Systems's stock price decreased by over five percent on May 6, 2015. Whether the stock price was caused by alleged misrepresentations or some other factor is for now an open question. Consequently, inasmuch as Defendants have failed to defeat the *Basic* "presumption through evidence that an alleged misrepresentation did not actually affect the market price of the stock[,]" *Halliburton II*, 134 S. Ct. at 2417, the Court declines to shorten KBC's proposed Class Period. If, however, "subsequent developments in the litigation" show the Class Period should be shortened, the Court will entertain an appropriate motion in that regard. *See General Tel. Co. of the Southwest*, 457 U.S. at 160.

## VI. CONCLUSION

In light of the foregoing, KBC's motion (1) for class certification, (2) to certify KBC as the class representative, and (3) to appoint Motley Rice and Robbins Gellar as class counsel is **GRANTED**.

**IT IS SO ORDERED**.

Signed this 28th day of September, 2017, in Columbia, South Carolina.

                                            s/ Mary Geiger Lewis
                                            MARY GEIGER LEWIS
                                            UNITED STATES DISTRICT JUDGE